**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**In re: FREDERICK DEWON COOPER,**

        **Debtor.**

Case No. 20-30632-KRH
Chapter 13

**FREERICK DEWON COOPER,**

        **Plaintiff,**

**v.**

**BOWEN TEN, PC, formerly known as BOWEN TEN CARDANI, PC,**

**CRITZER CARDANI PC,**

**JACQUELINE W. CRITZER,**

        **Defendants.**

Adv. Proceeding: 21-03014-KRH

## MOTION TO DISMISS COMPLAINT

COME NOW, BOWEN TEN, PC, formerly known as BOWEN TEN CARDANI, PC, CRITZER CARDANI PC, and Jacqueline W. Critzer (collectively the "**Defendants**"), by counsel, in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, and §§ 105 and 362 of title 11 of the United States Code (the "**Bankruptcy Code**"), and move to dismiss with prejudice the Adversary Complaint (Doc. No. 1) (the "**Complaint**") filed by Frederick Dewon Cooper (the "**Debtor**") on February 27, 2021, because the Debtor has failed to state a claim upon which relief can be granted. In support of the motion to dismiss, the Defendants state the following:

Andrew Biondi, VSB No. 48100
Klementina V. Pavlova, VSB No. 92942
SANDS ANDERSON PC
Post Office Box 1998
Richmond, Virginia 23218-1998
(804) 648-1636 Telephone
(804) 783-7291 Facsimile
abiondi@sandsanderson.com
kpavlova@sandsanderson.com
*Counsel for the Defendants*

## PRELIMINARY STATEMENT

1. The Debtor asserts that Defendant, Jacqueline W. Critzer, (hereinafter "**Critzer**"), attorney for the defendant firms, violated the Fair Debt Collection Practices Act 15 U.S.C. § 1692 *et seq*. (hereinafter "**FDCPA**") and Bankruptcy Code §§ 362(a) and 362(k) in her representation of William E. Howland, Jr. ("**Creditor**"), a creditor of the Debtor.

2. Debtor alleges that Defendants overstated and failed to accurately verify amounts alleged to be owed in a proof of claim and in the adversary complaint Critzer prosecuted on behalf of the Creditor, violating the FDCPA and the automatic stay, causing him related statutory and actual damages. The Complaint relies exclusively on incorrect and conclusory assertions of the law and, therefore, fails to state a claim on either count.

## STATEMENT OF RELEVANT FACTS [1]

3. A debt arose between the Debtor and Creditor when the "Creditor provided equine handling during 2019 for Debtor's personal horse "Will Fanzy" and for "Soiree" a horse belonging to Rachel Kane." Compl. ¶ 12. On September 27, 2019, the Creditor, *pro se*, filed a Warrant in Debt against the Debtor in the amount of $1518.56, with 6% interest from the date of judgment until paid plus $61.00 for costs. Compl. ¶11. Debtor further alleges that, "On or about September 28, 2019, Creditor received a partial payment of $865.00 from Rachel Kane for Creditor's handling of Soiree towards the debt sought in Case No. GV19-1699, and Creditor accepted payment, thereafter failing to supplement his disclosures with the General District Court, and proceeded to seek judgment for the full $1518.56." Compl. ¶ 13. "On or about October 25, 2019, Creditor obtained a default judgment against Plaintiff for the full amount of the debt, $1518.56, and was

---

[1] This Statement of Relevant Facts is derived from the Complaint's allegations and is accepted as true only for the purposes of this Motion to Dismiss.

awarded 6% statutory interest from the date of judgment until paid plus $61.00 for costs." Compl. ¶ 14. The Debtor alleges that "no written contract ever existed as to the purported original Debt and thus the Warrant in Debt listed the Plaintiff as William E. Howland, Jr., personally and did not list Creditor's company as a party in interest." Compl. ¶ 15. Therefore, the Debtor alleges that Creditor sued Debtor in his personal capacity for services related to Debtor's hobby of horse showing. Compl. ¶ 16.

4. On February 6, 2020, the Debtor filed a Chapter 13 bankruptcy Case No. 20-30632 (his second such filing), wherein Creditor is listed. Compl. ¶ 17.

5. On March 2, 2020, Creditor filed a proof of claim for the judgment amount, plus interest, for a total claim of $1619.54.  Compl. ¶ 18. Creditor had agreed to return $865.00 of any recovery from this claim to Rachel Kane. Compl. ¶ 19. Creditor's proof of claim seeking $1619.54 did not credit Debtor's account for the $865.00 received from Rachel Kane on September 28, 2019. Compl. ¶ 20.  Debtor alleges that Creditor's proof of claim was factually inaccurate because of the way Creditor dealt with Rachel Kane's payment and that Creditor committed errors in calculating judgment interest (including 120 days of interest rather than 105 days).  Compl. ¶ 22. Debtor alleges that Creditor should have claimed only $730.35 in his proof of claim. Compl. ¶ 23.

6. On February 28, 2020, Creditor further sued Debtor, *pro se*, filing a Complaint to initiate an adversary proceeding (AP Case No. 20-03021-KRH) (the "**Adversary Proceeding**"), demanding that his claim of $1,619.54 be excluded from Debtor's discharge pursuant to 11 U.S.C. §§ 523 (a)(2)(A) on the basis that the debt was induced by Debtor's fraud.  Compl. ¶ 24.

7. Critzer, on May 26, 2020, filed a notice of appearance and an amended complaint in the Adversary Proceeding, seeking the same $1,619.54.  Debtor assails Critzer for "failing to perform any due diligence such that she attempted to collect upon full principal and erroneous

amounts of interest from Debtor." Compl. ¶ 27. Debtor alleges that "Defendants' failure to verify the debt by Creditor thus resulted in Creditor seeking amounts not due and owing by Debtor, where the full judgment amount plus costs and 6% interest of 105 days thus 3.5 months was equal to $1606.64." Compl. ¶ 31.

8. The Debtor concludes that since the "Defendants did not seek to amend the Adversary Complaint to seek lesser amounts and thus, as a matter of law, still sought from Debtor amounts in repayment of $1619.54, said amount being in excess of Creditor's Amended Claim No. 6, by $862.11, and further being $889.19 in excess of Creditor's legal claim of $730.35, as calculated in paragraph 31," violations of the FDCPA and automatic stay occurred. Compl. ¶ 35. The Debtor faults Defendants for Creditor not succumbing to Debtor's counsel's several demands to vacate the judgment of October 25, 2019, show that funds of Rachel Kane were held in Trust, amend the Adversary Proceeding Complaint, amend Creditor's proof of claim to correct interest calculations, and reduce the claim to $800.00. Compl. ¶ 36. Debtor claims "irreparable" harm and severe emotional distress. Compl. ¶¶ 37-38.

**STANDARD OF REVIEW**

9. A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. To survive the motion, a plaintiff must have proffered "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Vague and conclusory allegations are insufficient, "and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Vila v. Miami-Dade Cnty.*, 65 F. Supp. 3d 1371, 1377 (S.D. Fla. 2014)

("[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal."); *Jackson v. Bellsouth Telecomms., Inc.*, 181 F. Supp. 2d 1345, 1353 (S.D. Fla. 2001) ("[A] court 'will not accept, without more, conclusory allegations or legal conclusions masquerading as factual conclusions.'" (citation omitted)).

## ARGUMENT AND AUTHORITY

### I. Count I Fails Because an FDCPA Claim Does Not Lie for Actions Taken by a Debt Collector in the Context of Pursuing a Creditor's Claim in Bankruptcy.

10. To begin, by the Debtor's own allegations, nearly all of the collection activity was conducted not by Defendants, but by the Creditor. Creditor, *pro se*, filed the warrant in debt in Culpeper County General District Court. Creditor appeared *pro se* in that Court to obtain judgment. Creditor filed the initial proof of claim in this Court. Creditor filed the Adversary Proceeding Complaint. Defendants only became involved in this fact pattern beginning with Critzer filing an appearance in this case on May 26, 2020. Any remote possibility of liability attaching to Defendants can only pertain to activity taken since that initial appearance. Notably, Defendants' activities took place entirely during the pendency of, and within, this Chapter 13 case.

11. Debtor alleges that the Defendants actions (or failures to correct the actions of Creditor) constitute violations of 15 U.S.C. §§ 1692b, c, d, e, and f of the FDCPA. Without specifying what acts or omissions violate which section of FDCPA, Debtor claims those alleged transgressions did harass, oppress, and abuse him; included false, deceptive, and misleading representations; and were false, unfair, and unconscionable.[2] But these alleged acts and omissions all occurred within the context, and during the pendency, of Debtor's Chapter 13 case and relate to

---

[2] Much of what Debtor complains of is a "failure" to verify the debt, but "[t]he FDCPA does not require a debt collector to engage in an independent investigation of the debt referred for collection." *Sayyed v. Wolpoff & Abramson, LLP*, 733 F. Supp. 2d 635, 646 (D. Md. 2010).

5

the amount alleged to be owed under Creditor's proof of claim, the filing of which is governed by Federal Rule of Bankruptcy Procedure 3001(c), and to the filing and prosecution of the Adversary Proceeding Complaint, which is governed by Federal Rule of Bankruptcy Procedure 5005(a).

12. In examining an alleged violation of the FDCPA committed in connection with a bankruptcy case, this Court looks to *Midland Funding LLC v. Johnson*, 137 S. Ct. 1407, 197 L. Ed. 2d 790 (2017) as its starting point. *See Derby v. Portfolio Recovery Assocs, LLC (In re Derby)*, 2019 Bankr. LEXIS 945 at *10. The first holding from *Midland* is that because the bankruptcy code enables creditors to file a "claim" which may or may not be an "enforceable claim", it cannot be said that filing a proof of claim on a time-barred debt in a bankruptcy court violates the FDCPA. *Id.* at *11. The broader interpretation of this holding is that because the Bankruptcy Code and Federal Rules of Bankruptcy Procedure processes broadly and sufficiently govern creditor activities within the confines of bankruptcy proceedings, the FDCPA is superfluous and, therefore, superseded by the Bankruptcy Code's system of determining what is allowable in a bankruptcy court and what relief is to be offered when rules are not followed.

13. The second holding from *Midland,* also applicable herein, is that the context of a civil suit differs significantly from a Chapter 13 bankruptcy proceeding, and so the protections available to a Chapter 13 bankruptcy proceeding minimize the risk of abuse to where the FDCPA with its remedy provisions is unnecessary and inapplicable. *See In re Derby* at *12, citing *Midland* at 1413-14.

14. The ultimate conclusion of *Midland* was adopted by Judge Philips in *In re Derby*, leading the Court to dismiss a debtor's FDCPA claims with prejudice on a motion to dismiss. *Id.* at 16. While that case addressed the filing and prosecution of proofs of claim under Rule 3001(c), the same analysis applies to the filing and prosecution of an adversary proceeding complaint under

6

Rule 5005(a). Where creditor / debt collector activity is taken according to procedures provided for by the Bankruptcy Rules and within a bankruptcy court, the FDCPA's remedies have no application – they are precluded.

15. "The FDCPA is designed to protect defenseless debtors and to give them remedies against abuse by creditors. There is no need to protect debtors who are already under the protection of the bankruptcy court, and there is no need to supplement the remedies afforded by bankruptcy itself." *In re Derby* at \*14 (quoting *Simmons v. Roundup Funding, LLC*, 662 F.3d 93, 96 (2d Cir. 2010)). *See also Dubois v. Atlas Acquisitions LLC* (*In re Dubois*), 834 F.3d 522 (4th Cir. 2016) (rejecting FDCPA claim based on the filing of a proof of claim because the provisions and procedures employed in bankruptcy court are adequate to protect the debtor).[3]

16. For these reasons, this Court should grant Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the Debtor's claims for violation of the FDCPA in Count I of the Complaint, all of which are based on filings made and actions taken within the confines of this Chapter 13 bankruptcy case.

**II.     Count II Fails Because it Rests on Purported Obligations not Required by the Bankruptcy Code and a Misunderstanding of What Acts Can Plausibly Violate the Automatic Stay**.

---

[3] It is recognized that the Hon. J. Rebecca Connelly of the U.S. Bankruptcy Court for the Western District of Virginia decided this issue of FDCPA claim preclusion in the other direction in the case of *Brooks v. Midland Funding, LLC (In re Thomas)*, 592 B.R. 99 (Bankr. W.D. Va. 2018). That case involved "a business practice of filing proofs of claim that knowingly contain false statements regarding whether the amount claimed includes interest, fees, or other charges, then withholding from debtors the credit card agreement when a written request is made pursuant to Bankruptcy Rule 3001, then amending the proofs of claim only when an adversary proceeding is filed against the defendants, but amending the clams in a manner that is inappropriate and defies Rule 3001." *Id*. at 108. These facts are far afield from the Creditor's one-time appearance in this Court and Critzer's allegedly having "failed to verify" a calculation of this one debt. Even if the facts of these two cases can be analogized, Defendants argue that the better reasoned approach, and the one more in keeping with Supreme Court and Fourth Circuit precedent, is the approach that the Hon. J. Keith Philips takes in *In re Derby*.

17. Repeated herein is the point made in paragraph 10 above – all of Defendants' collection activities have occurred within the context of this Chapter 13 case. Debtor's claims under Count II of the Complaint (Violation of the Automatic Stay) stem from alleged failures by Defendants to verify amounts owed by the Debtor prior to prosecuting a proof of claim and an adversary complaint previously filed by Creditor.

18. The Complaint is replete with assertions of FDCPA and Rule 9011 violations, unjust enrichment assertions, and a hodge-podge of accusations of coercive threats, all occurring during Defendants' prosecution of Creditor's claim within the Chapter 13 case. Debtor urges that these perceived wrongs can provide the basis for violations of the automatic stay, despite the fact that this activity occurred during litigation in this forum.

19. "Under the Bankruptcy Code, filing a petition for bankruptcy automatically 'operates as a stay' of creditors' debt-collection efforts **outside the umbrella of the bankruptcy case**." 11 U. S. C. §362(a)." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (emphasis added).

20. This very basic, definitional statement about the scope of the stay of collection activity is dispositive of Debtor's claims because none of the debt-collection efforts conducted by Defendants as alleged in the Complaint were taken outside of the bankruptcy case.

21. 11 U.S.C. § 362(a) lists certain types of actions that are stayed by virtue of a bankruptcy petition. That list does not include Creditor's claim filed in this Court, and it does not include a requirement for Creditor's lawyer to independently verify the amount sought.[4]

---

[4] (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title [11 USCS § 301, 302, or 303], or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 [15 USCS § 78eee(a)(3)], operates as a stay, applicable to all entities, of—

22. The filing of a proof of claim is expressly provided for by Fed. R. Bankr. P. 3002 and is necessary for a creditor to protect its interests in a Chapter 13 case. Fed. R. Bankr. P. 3002(a) provides that "an unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed, except as provided in Rules 1019(3), 3003, 3004, and 3005." In the instance where a dispute arises over the amount listed on a proof of claim, debtors are protected by Fed. R. Bankr. P. 3007, which provides that "an objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing." Therefore, the Bankruptcy Code expressly delineates the manner in which disputes over a claim are to be conducted.

23. Second, initiating an adversary proceeding pursuant to § 523 to determine dischargeability of a debt does not and cannot violate the automatic stay because the stay does not operate against the court with jurisdiction over the bankruptcy. *Robert Christopher Assoc. v.*

---

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

9

*Franklin Realty Group, Inc. (In re FRG, Inc.),* 121 B.R. 710, 714 (Bankr. E.D. Pa. 1990) (citing *In re Teerlink Ranch Ltd.,* 886 F.2d 1233, 1237 (9th Cir. 1989)); *see also In re Briarwood Hills Assoc.*, 237 B.R. 479, 480 (Bankr. W.D. Mo. 1999) ("The automatic stay does not apply to proceedings in the bankruptcy court having jurisdiction over the debtor. Numerous courts have held that the automatic stay implicitly does not bar a party from commencing a proceeding against the debtor in the court where the bankruptcy petition is pending."); *In re Bird*, 229 B.R. 90, 95 (Bankr. S.D. N.Y. 1999) (citations omitted) ("The purposes of the automatic stay, to preserve the assets of the debtor for the benefit of all creditors and to protect the creditors from each other by stopping the race to seize the debtor's assets, are not advanced by disallowing suits against the debtor in the court where the bankruptcy case is pending.").

24. The amount of the debt owed is often disputed by the debtor in bankruptcy, and rarely are figures in the beginning of the litigation completely accurate or even verifiable. However, litigation can go forward against a debtor because the bankruptcy court retains control, which protects the interests of both debtor and creditor. The automatic stay serves to protect the bankruptcy estate from actions taken by creditors outside the bankruptcy court forum, not lawful actions taken within the bankruptcy court, pursuant to its rules and procedures.

25. The filing of the Proof of Claim and Adversary Complaint in the Bankruptcy Court, which controls the process of administering property of the bankruptcy estate, is the logical equivalent of a request for relief from the automatic stay, which cannot, in itself, constitute a violation of the stay pursuant to § 362(h). *See, e.g.*, *In re FRG, Inc.*, 121 B.R. at 714. To then argue that prosecution of those filings – made expressly permissible under the aforementioned rules – violates the automatic stay is illogical and cannot follow.

26. Finally, the Debtor has not alleged any willful violations of the stay, nor can he when the activities all took place within the context of this Chapter 13 case. It is telling that Debtor's claimed damages include aggravation and upset related to extensive discovery, additional costs, and filing of several motions, as well as excessive and prolonged delays during the course of the case. These "damages" are ordinary and natural consequences of a course of litigation in any forum – litigation that a debtor understands is a potential possibility when he files a Chapter 13 case because the Bankruptcy Rules expressly allow for it. Debtor and his counsel obviously did not like Creditor's position taken in the underlying Adversary Proceeding; but their distaste for Creditor's position does not provide grounds to support a claim that Defendants violated the automatic stay simply by advocating it. The assertion is nonsensical, which is why there is no precedent for such an assertion to serve as the basis for an automatic stay violation.

27. The assertion is also stale. Debtor and his counsel have been aware of the disputed proof of claim since at least April 14, 2020, when the Debtor's Statement and Schedules were filed, listing Creditor's debt in the amount of $1,579.56. This claim was not listed as disputed, unliquidated, or contingent, but as stemming from a civil judgment. It was not until December 21, 2020, when Debtor finally filed an Objection to Proof of Claim. (Doc. 122).

28. On January 6, 2021, Creditor, through Critzer, filed a response to the Objection to Proof of Claim. On January 13, 2021, Debtor, by counsel, filed a Withdrawal of Objection to Proof of Claim. (Doc. 142). So, not only did the parties address Creditor's claim exclusively within the context of this Chapter 13 case, Debtor conceded the veracity of the claim by withdrawing his objection. Yet, the Debtor claims all manner of damages for his upset over this conceded debt while, at the same time, failing to mitigate his damages by delaying attempted redress until approximately seven months after the disputed Proof of Claim was filed. This, despite the fact that

"[t]he debtor is under a duty to exercise due diligence in protecting and pursuing his rights and in mitigating his damages with regard to such violations." *Clayton v. King (in re Clayton)*, 235 B.R. 801, 811 (Bankr. M.D. N.C. 1998) (*citing Mitchell Constr. Co. v. Smith (In re Smith),* 180 B.R. 311, 320 (Bankr. N.D. Ga. 1995)); *see also Lori v. Lori (In re Lori)*, 241 B.R. 353, 356-57 (Bankr. M.D. Pa. 1999); *In re Brock Utilities & Grading, Inc.,* 185 B.R. 719, 720 (Bankr. E.D. N.C. 1995). Debtor had more than a fair opportunity to dispute the veracity of Creditor's claim but, instead, withdrew his objection and extended an offer of judgment, which Creditor accepted. (Adversary Proceeding; Doc. No. 63). Yet now he is requesting a groundbreaking and novel application of the automatic stay. Debtor's invitation to create new precedent herein should be declined.

29. For these reasons, Debtor has failed to state facts sufficient to allege a cause of action based on the filing or prosecution of the proof of claim and the complaint in the underlying Adversary Proceeding. This set of facts cannot possibly support a claim for violation of the bankruptcy automatic stay.

## CONCLUSION

**WHEREFORE**, BOWEN TEN, PC, formerly known as BOWEN TEN CARDANI, PC, CRITZER CARDANI PC, and Jacqueline W. Critzer respectfully request that the Court enter an Order: (i) granting their motion to dismiss Debtor's adversary complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and (ii) granting such other and further relief as deemed fair and equitable.

Date:  March 30, 2021 	Respectfully submitted,

**BOWEN TEN, PC, formerly known as
BOWEN TEN CARDANI, PC,
CRITZER CARDANI PC and
JACQUELINE W. CRITZER**

By Counsel

 */s/ Andrew Biondi*
Andrew Biondi, VSB No. 48100
Klementina V. Pavlova, VSB No. 92942
SANDS ANDERSON PC
Post Office Box 1998
Richmond, Virginia 23218-1998
(804) 648-1636 Telephone
(804) 783-7291 Facsimile
abiondi@sandsanderson.com
kpavlova@sandsanderson.com
  *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March, 2021, the following person(s) were served with a copy of the foregoing Motion to Dismiss via the CM/ECF system or by first class mail, postage prepaid:

Carl M Bates, Esquire
P.O. Box 1819
Richmond, VA 23218
  *Chapter 13 Trustee*

Kimberly A. Chandler, Esquire
Chandler Law Firm
P.O. Box 17586
Richmond, VA 23226
  *Counsel to the Debtor*

Frederick Dewon Cooper
720 Carldan Road
Richmond, VA 23227
  *Debtor*

Office of the US Trustee - Region 4 -R
701 E. Broad Street, Ste. 4304
Richmond, VA 23219

   */s/ Andrew Biondi*