**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| In re: FREDERICK DEWON COOPER, ) | |
| ) | |
| Plaintiff ) | BK Case No.:  20-30632-KRH |
| v. ) | Chapter 13 |
| ) | |
| BOWEN TEN, PC., formerly known as ) | |
| BOWEN TEN CARDANI, PC. ) | AP Case No.:  21-03014-KRH |
| ) | |
| CRITZER CARDANI PC ) | |
| ) | |
| JACQUELINE W. CRITZER ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO
DISMISS, AND MEMORANDUM IN OPPOSITION
AND MOTION TO AMEND PLEADINGS**

COME NOW Frederick Dewon Cooper, Plaintiff, herein, and respectfully tender this his Response and Motion in Opposition to Defendant's, hereinafter ("Critzer or Critzer et al") Motion to Dismiss and tenders Plaintiff's Motion to Amend Pleadings.

**INTRODUCTION**

In the underlying litigation In Re: Howland, Jr., AP Case No. 20-03021-KRH, which in part gave rise to the underlying claims herein, it appearing at this juncture it is undisputed that three parties all claimed an interest in $865.00, held by William E. Howland, Jr., ("Creditor"), on the date of the petition, that being Plaintiff, (the "Debtor") by and through the Chapter 13 estate, the second Creditor and the third-party Rachel Kane, a current resident of Illinois.  The Plaintiff brought the instant action asserting statutory claims under the Fair Debt Collection Practices Act 15 U.S.C. Section 1692 et seq. (hereinafter "FDCPA"), and Bankruptcy Code §362(a) and §362(k).  Defendant,

Jacqueline W. Critzer, (hereinafter "Critzer"), brings their motion against Plaintiff's to

dismiss citing with scant authority that Plaintiff's claims cannot lie under the FDCPA for

filing a proof of claim.  In doing so, Defendants ignore the factual pleadings placed

before the Court in that complaints filed pursuant to Federal Rule of Bankruptcy

Procedure 5005(a), are easily distinguishable from proof of claims.  Moreover, Congress

had the ability when drafting the FDCPA, to exclude Rule 5005(a), proceedings from

their definition of collections actions and chose not to do so.  The preemption argument

here is wholly disingenuous as it relates the factual matters before the Court.  Moreover,

the correct and most recent case law contradicts this argument where the FDCPA, will lie

when a creditor attempts to collect on a debt previously paid not withstanding that the

claim was included in a Chapter 13 bankruptcy case.[1]  Defendant further ignores that

while not stated in the complaint the Court can find relief in the alternative as to each

count and thus, the Debtor has included in his response a request to amend his complaint

to the extent such a prayer is needed to do so herein.

Next, Plaintiffs argue under Bankruptcy Code §362, that a claim cannot lie for

filing an adversary because the act is governed by the bankruptcy Court, whilst ignoring

the factual matters at issue herein intersect with the ability of Howland to exercise a right

to set off his unsecured debts to Cooper.  The most recent case and directly on point in

*Wood v. United States Department of Housing & Urban Development, (In re Wood) (4th*

*Cir. 2021),* the U.S. Court of Appeals for the Fourth Circuit Court.  The facts in this case

directly apply where in every instance Critzer and Creditor acted contrary to his stated

position in the first instance the concealed funds were de facto held as a "suspense

---

[1] In *Manikan v. Peters & Freedman L.L.P.*, No. 19-55393, 2020 WL 6938318 (9th Cir. Nov. 25, 2020) the Ninth Circuit Court of Appeals addressed whether a debtor was precluded from bringing a Fair Debt Collection Practices Act ("FDCPA").

payment'.  Further, he undertook no act to support any finding of good faith where neither he or his counsel sought remedies available to them, namely the filing of an interpleader, or request for declaratory judgement or motion for relief from stay to determine as a matter of law Howland's ability to offset Cooper debt or continue to exercise dominion over the funds.

It follows that Critzer merely argued for legal title to funds held by Creditor but did not act to determine those interest.  Thereafter, Critzer argued on behalf of Creditor the "unapplied" funds belonged to Creditor and then later, presumably instructed him to apply them as a right to set off in contradiction of §362(a)(7) and applicable caselaw. To state that no facts exists as to state a claim upon which relief can be granted at this juncture in regards to Critzer et al, is wholly misinformed and dependent on a rather disingenuous theory of the case.

## FACTUAL MATTERS AS THEY RELATE TO THE CONDUCT OF DEFENDANTS

At no point during the underlaying proceeding did Critzer offer any probative evidence of her later contentions that Howland became the beneficiary of a $865.00, payment by Kane, nor at what time and ultimately possessed a legal claim to the amount which remained unapplied to Coopers equestrian account at the commencement of the bankruptcy petition.  Critzer produced no writing, sworn statements by Kane or depositions that supported any statement by Kane and offered into evidence and attached in her pleadings Critzer's own summary emails to Chandler as to Kane's alleged conversations with Critzer.  Said actions by Critzer being strictly prohibited during trial where statements made by a purported witness to counsel cannot be referenced and included as evidentiary support in the proceedings therein.  Despite having no evidence

directly from Kane, Critzer and Creditor appeared in numerous proceedings asserting an interest superior to the estate, and later applied the funds as a "matter of right" to set off Creditor's pre-petition debt and further engage in concealment as to render the fund held by Creditor effectively converted for Howland's personal benefit at the outset.  Given every aspect that is currently before the Court is fully in dispute and by various parties it is hard to reconcile a motion to dismiss being brought at this stage of the proceedings herein.

To the extent that it can be determined what facts the Court should consider at this early stage as many matters by Critzer et al, have been argued and reargued with differing legal contentions and thus facts manipulated to a dizzying degree of insincerity in the underlaying court case it is appearing that a partial summary of the contested matters must be stated herein.  It is undisputed that Cooper's interim bankruptcy filing legally stayed any ability for Howland to collect outside of Debtors Chapter 13 plan.  It is undisputed Howland never filed a motion for relief to withhold funds from Cooper, never return the funds to Kane and that after a period of acts of concealment by Howland, Kane filed her own proof of claim and was included as a payee in Debtor's case.  Thereafter, Howland's duties to the extent any existed towards Kane were allegedly discharged.  Kane purportedly reserved no expectation of a return of those funds from Howland.  It further appearing that Howland, had never actually put any of the funds into a trust for Kane and paradoxically should have included those funds as income in the year 2019 and should have applied them to Cooper's account prior to the commencement of the Debtors bankruptcy case.

However, Creditor contended he "withheld applying the $865.00 to Cooper account by constructively "promising" to pay Kane back should Cooper ever pay the debt

to Howland. It is not determined if Howland applied the Kane funds to his 2019, gross

earnings. Yet Howland avers no amounts were held in trust, therefore it follows said

payment is arguably and "legally" income as of December 31, 2019, per the laws

governed said payment and applicable I.R.C. Critzer further takes the legal position in her

pleading that a new contract was created where Cooper was not in privity with the

parties.  If true, one need then analyze the legal ramification of Cooper's bankruptcy

filing which stayed any ability of Howland to collect upon the debt.  Regardless of

Howland's ignorance of the fact as a matter of law Howland could not accept payment

from Cooper even if Cooper desired to voluntarily pay Howland thus to make Kane

whole.

Critzer is estopped from denying Creditors stated position that the funds belonged

to Kane, despite Creditor's possession of the $865.00, which he claimed in other words to

have created a constructive trust as evidenced by his proof of claim seeking repayment of

amounts inclusive of the $865.00, rendered to Creditor by Kane.  Creditor denied the

same was a legal assignment.  Creditor claimed and Critzer support the assertion by and

through her later acts that Howland has no duties to disclose these funds or apply them to

the final balance of the debtor's account.  At all relevant times and inclusive of the dates

far exceeding mandatory disclosures in the underlying Complaint, Howland maintained

possession of the disputed $865.00, exercised dominion and control by depositing them

into his bank account and there also participated in active concealment from the Debtor.

Further, after getting caught as such Critzer then argued for legal title to these

funds to apply them, but failed to seek a motion for relief to have the court determine

these matter nor even seek approval to maintain colorable claims of possession.  What

followed by Critzer was then participation in two more acts to exercise dominion over the

funds.  First, Critzer instructed the Court and presumably by doing so presume to alert the

Chapter 13 trustee, that the $865.00, funds belonged to Howland under a third party

contract.  Creditor then further acted upon this assertion wherein Howland's refused to

return the money to Kane upon demand, after she then learned of Coopers bankruptcy

and that Howland had no ability to collect upon the debt where it was legally stayed by

the bankruptcy proceeding.  After a period of time resulting in no cooperation from

Howland, Ms. Kane then file her own claim for the $865.00 in debtor's bankruptcy case.

It appearing Howland thus changed his position and without further leave of the Court

proceeded to exercise a post-petition right to set off, of these funds against his unsecured

claim.  Even whilst Critzer simultaneously argued Howland still had a right to collect

upon the $865.00 funds, for debts that were incurred during a time period implicated

under Section 523, inexplicably seeking the very same and actual charges that Kane

sought to cover by rendering payment.   Basically, both Creditor and Counsel presumed

to make up the law in nearly every regard according to their whims.  Debtor contends the

estate at all times had a superior interest in the $865.00, and Critzer is now estopped from

denying arguments to the contrary.  The position of Critzer et al herein, is that the Court

should now blindly conclude Defendant did not act improperly in her participation in

what appears to be the unilateral exercise of a right to set off on unsecured claims.  Those

matters have not been brought by Creditor and the factual determinations as to the

violation of stay herein are directly linked to that determination. Until or unless a legal

determination is made it is the reasoning of Debtor that the set off was exercised during

the course of the case.

Thus, the Motion to Dismiss at this juncture is wholly without merit.  Critzer et al

and her former client further affirmatively at all times sought repayment of a debt that

was legally paid in full by Kane under any set of facts presented by Critzer et al, as it

related to the Section 523 complaint.  The exact amounts, dates and services for which

Kane paid were readily distinguishable as discrete and separate charges on Creditor's

billing records.  Creditor's active concealment and negligent acts of Defendant's further

facilitated the collection of debts incurred on the dates in question while in receipt of full

payment was "prime a facie" harassment.  Kane did not agree that Howland could apply

the funds to Coopers entire outstanding bill she specifically directed Howland to pay for

services on specific dates related to a horse she owned and for which she specifically

sought to indemnify herself namely her horse Portia, and therefore any trust created was

towards specific billing line items.  The suit that followed seeking payment for the same

items violated the stay as regarding any set of facts those items were paid.  The later

change in position by Howland occurred where at all times Critzer was counsel to

Creditor and thus acts or omissions under the stay are actionable as towards Critzer.

Further evidence of this exists where Critzer filed her notice of appearance in the case

and later a amended proof of claim for Creditor and thus presumed some level of duties

in regard to said acts or omission in regard to the unsecured debt, the disputed funds and

thus any resulting change in the status quo or acts in violation of the stay occurred during

her appearance and upon her counsel in the case.

## **LEGAL STANDARDS**

### A.    **Motion To Dismiss**

Motions to dismiss are disfavored. *Brzonkala v. Virginia Polytechnic and State*

*University*, 935 F. Supp. 779, 783 (W.D. Va. 1996) (dismissals for failure to state claim

generally disfavored and granted only when it appears beyond doubt that plaintiff can

prove no set of facts in support of claim entitling plaintiff to relief). The Defendant has a

high burden to meet in prevailing on its Motion to Dismiss, since such a motion will not

be granted unless it appears certain that the plaintiff can prove no set of facts which

would support its claim. *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 655 (4th Cir.

2004). In its review of the motion, "the court should accept as true all well-pleaded

allegations and should view the complaint *in a light most favorable to the plaintiff*."

*Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002) (emphasis added).

### B.     Policy Considerations Articulated By Defendant Are Misinformed

In view of the factual detail in the Complaint, Counsel for Defendant articulates

and advances policy arguments that bely an uninformed view of the resources available

to the average consumer debtor.  It is helpful at this stage to thus, remind Counsel

regarding his lack of experience in this regard that Congress had the ability to exclude

bankruptcy collection acts from the FDCPA, when drafting these provisions.  Thus, the

erroneous argument that an adversary on a standard consumer debt should be excluded

under the FDCPA as a matter of policy is troubling.  In it is counsel for Defendant, who

specialized in FDCPA, and yet fails to recognize proceedings in AP's stand alone as

separate actions in a bankruptcy case and are thereby in every way are distinguishable

from a creditor filing a claim in a bankruptcy case.  Debtors have no counsel when an

adversary is filed against them.  Listing the remedies of an objection to claims brought in

a Debtor's main case as the exclusive means for which Sands argues for dismissal is

completely irreconcilable with logic, and the facts of this case.  Particularly, where it was

clear the Debtor was wholly unaware due to concealment of the final balance of his

account until well after the bar date to object to Howland claim.  Where Howland and his

counsel further concealed the $865.00 payment whilst seeking full repayment of

previously paid amount after Cooper filed a 1% repayment plan under his Chapter 13

Bankruptcy.  Moreover, Counsel for Howland has still never produced records that explain why Howland's last communication with Debtor purported yet another third-party payment of $3,500.00, towards Cooper's open account and as yet no records could be obtained by Counsel to show where these payments were credited making it highly likely that Critzer sued Debtor when he in fact owed nothing to Creditor at the outset of litigation.  Moreover, further instances of gross negligence resulted when Critzer choose to file her first amended complaint in sole reliance upon a compilation created by persons unknown, which was nearly 5 months out of date from Debtor's petition.  It appearing that even a cursory verification of the debt, was never attempted at the outset, where the pleadings exclude any sworn affidavit by insiders concerning the accuracy of the records kept in the ordinary course.  This is the definition of indifference. The FDCPA is not only applicable but it is this exact behavior that the framers intended to curtail by including provisions which prohibit seeking repayment of amounts legally paid to the creditor.

To suggest an alternative standard that "amounts can be sued for that are unknown", one does not doubt that.  But to do so without even a cursory attempt to secure current records, or perform reasonable diligence is to proceed in sheer ignorance.  Records produced throughout these proceedings were exclusively an inaccurate compilation that was outdated by some 5 months on their face.  As of the day of Debtor's depositions some 10 months later Critzer still had not secured billing records from her client, nor disclosed them to counsel and what remains is questionable conduct concerning the further $3,500.00, unaccounted for thought purported received by Howland under his own admissions.  Said amount yet again received by another third part that is wholly still at issue in relation the underlaying proceedings.  That amount of

blind ignorance in a federal bankruptcy proceeding does not reinforce that Congress has

no interest in such abuses it sought to remedy when the FDCPA was passed.

Nor does excluding a class of persons from the FDCPA, when they are in fact the

most vulnerable litigation parties, thus having committed all their disposable income to

their creditors in a Chapter 13 plan.  It is incredulous for Sands to ague this case presents

real grounds for the bankruptcy court to turn a blind eye.  Thus, given the small amount

in controversy here as in most FDCPA cases counsel is tempting the Court to take the

bait.  However, it is these prolific and harassing smaller infractions that collector

repeatedly undertook and further acts of negligence by attorneys acting as collection

agents that the FDCPA sought to address by enacting a bright line rule.  Thus, a violation

is capped at a nominal amount of $1,000.00, plus fees and cost and meant to be a strict

liability measure.  Also, being meant to induce attorneys to bring actions for these smaller

but necessarily abusive practices.  Being called to answer if federal or state court for a

debt one does not even owe is necessarily a stressor and a burden in particular when one

has no resources to defend.

## I. PLAINTIFF FRED COOPER HAS STATED A VALID CLAIM FOR VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

Defendant's reliance on *In re:  David Anthony Derby,  David Anthony Derby v.

Portfolio Recovery Associates, LLC, 2019 WL 1423084*, is misplaced.  In *Derby*, the

creditor, Portfolio Recovery Associates, LLC, ("PRA") is a corporate debt collector.

There had never been any personal relationship between the Debtor, Derby and PRA.

The omission of interest and/or fees in PRA's proof of claim was not due to bad faith.

The Court determined that these deficiencies in the proof of claim constituted a violation

of Rule 3001(c)(2)(A) and that such actions are sanctionable under 11 U.S.C. § 105.  The

Supreme Court took a similar position in *Midland Funding, LLC v. Johnson, 137 S. Ct.
1407 (2017).*  Like the case in *Derby*, *Maddus* involved a corporate debt collector.   The
Court in *Derby* stated, "Neither the Supreme Court nor the Fourth Circuit Court of
Appeals has held that FDCPA actions may never be brought in the context of a
bankruptcy,25 and this Court does not so hold." *Derby*, page 7.  The facts in the case
show that the issue does not involve a mere failure to list an interest rate or to check the
right box, etc.  The facts in this case are distinguishable from those in either *Derby* or
*Maddux* and Defendant's is now estopped from denying, that Creditor, having thus
applied the payment in the ordinary course as evidenced by Defendant's corrected and
amended proof of claim and thus further acknowledging Creditor's acceptance pre-
petition the amount of the $865.00, was not engaged in collecting said amount when
Defendant she filed her first amended complaint seeking repayment of amounts
previously paid.  Thus, the argument that an adversary on a standard consumer debt for a
sum certain should be excluded from verification of the debt, particularly when the filing
excludes any sworn affidavit by an insider concerning the records relied upon being keep
in the ordinary course and in fact is unsupported by any current records is wholly
inexplicable.

Moreover, there is no such exclusions from the FDCPA, and thus bankruptcy does
not preempt these provision as argued extensively by Defendant.  Critzer choose to sue
for an erroneous debt in her first amended complaint and contradicted by her amended
proof of claim to where the final balance on Debtor's account was unverified, and in sole
reliance upon a compilation created by persons unknown that was nearly 5 months out of
date from Debtor's petition.  In doing so Critzer thus became liable under the FDCPA, by
seeking full repayment of amounts previous paid.  Said acts by Critzer's proceeding in

sheer ignorance upon outdated and erroneous records does not reinforce that Congress

has no interest in such abuses it sought to remedy when enacting the FDCPA in regards

to a bankruptcy proceedings.  Nor does excluding a class of persons from the FDCPA,

when they are in fact the most vulnerable litigant parties, thus having committed all of

their disposable income to their creditors in a Chapter 13 plan.

The United States Court of Appeals for the Ninth Circuit recently stated in

*Vincent Manikan v. Peters & Freedman, LLP, Does, 1-10*, No. 19-55393, D.C. No. 3:17-

cv-00467-BEN-JLB, that Attempting to collect a debt paid in full under a chapter 13 plan

can violate the federal Fair Debt Collection Practices Act.  In *Manikan*, the debtor was

about $3,000 in arrears in payment of assessments owing to his homeowners' association.

He filed a chapter 13 petition after the HOA commenced foreclosure proceedings.

During the chapter 13 case, the agent for the HOA gave notice that the arrears had been

paid in full. The chapter 13 trustee also issued a notice saying the arrears had been paid.

Later still, the debtor received his discharge after the trustee issued a notice of final cure

payments and completion of payments under the plan.  After discharge, a different agent

for the HOA served the debtor with the same notice of default that had been served on the

debtor before the chapter 13 filing. When the debtor explained that the arrears had been

paid, the HOA conceded that nothing was owing.  The debtor sued in district court under

the FDCPA, 15 U.S.C. § 1692-1692p. The district court granted the HOA's motion for

summary judgment, incorrectly relying upon Walls v. Wells Fargo Bank N.A., 276 F.3d

502 (9th Cir. 2002), for the proposition that Chapter 13 debtors were prohibited from

bringing FDCPA claims..

The U.S. Court of Appeals reversed and stated that the Plaintiff could seek relief

under FDCPA because his suit was not brough on a claim premised on a violation of a

bankruptcy discharge order as the Plaintiff had done in *Walls*. The Court stated, "This case is different. Manikan does not seek to remedy a violation of his discharge order. Instead, he alleges P&F acted unlawfully because it tried to collect a debt that he fully paid nearly two years before his discharge.3 So, even if Manikan had never received a discharge in his bankruptcy case, he could still assert P&F acted unlawfully by attempting to collect a debt that he fully satisfied. Manikan's FDCPA claims are therefore premised on a wholly independent theory of relief. *Manikan*, page 9.   The Court further found that *Midland Funding LLC v. Johnson, 137 S. Ct. 1407 (2017)*, did not conflict with its holding.  The Court stated, "As we have explained, the resolution of Manikan's claims does not hinge on bankruptcy-related questions. The only determination necessary is whether he fully paid his debt in 2014. This is easily resolved because Manikan's full payment is memorialized in multiple documents publicly filed by both his creditor's representative and the bankruptcy trustee and because P&F does not dispute that Manikan fully paid his HOA debt. Allowing Manikan's FDCPA claims to proceed therefore does not run afoul of Midland Funding. *Manikan*, Page 12.  To clarify its position as to whether the reasoning in *Walls* might suggest that §§ 105(a) and 524 of the Bankruptcy Code preempted § 1692(f) of the FDCPA, the Court stated, "But this cannot be right— "federal statutes do not preempt other federal statutes." *Swinomish Indian Tribal Cmty. v. BNSF R.R. Co., 951 F.3d 1142, 1153 (9th Cir. 2020)* (citation omitted).

In the present case, Debtor Plaintiff proposed an initial Chapter 13 plan that provides for a one percent (1%) payout to his unsecured creditors, inducing every incentive for Howland to seek to claim the monies tendered by Kane.  Thereafter, Debtor filed an amend plan at 100%, thus determining Kane could seek her own repayment then sought to keep the funds from Kane and not return them upon request. Regardless of the

proofs of claim or amended proof of claims that were filed, actions taken by Critzer on Creditor's behalf show a bad faith attempt to change positions based on what suited his theory of equities in the case.

It is incredulous for Sands to argue that this case presents real grounds for the bankruptcy court to turn a blind eye to the facts and circumstance as articulated in the complaint.  Thus, Critzer at all times was acting as a debt collector in this case and collection agents are covered by the FDCPA.   The Court in *Manikan* stated, "Instead, [Manikan] alleges P&F acted unlawfully because it tried to collect a debt that he fully paid nearly two years before his discharge. <u>So, even if Manikan had never received a discharge in his bankruptcy case, he could still assert P&F acted unlawfully by attempting to collect a debt that he fully satisfied</u>. Manikan's FDCPA claims are therefore premised on a wholly independent theory of relief." *Manikan*, page 9.  Defendant, need not look further in regards to concerns raised that Debtor has no actionable claims and that the matters contained herein are actionable under the FDCPA under current law.

## II. PLAINTIFF FRED COOPER HAS STATED A VALID CLAIM FOR VIOLATION OF AUTOMATIC STAY AGAINST DEFENDANTS

Plaintiff's claim for violation of the automatic stay implicates two rights protected under 11 U.S.C. §362.  First, the protection from harassment from Creditor's and their counsel in collections actions and Creditor's simultaneous concealment of possible assets of the estate.  Debtor has argued throughout that Creditor, through counsel, sought monies and concealed the fact that those funds were no longer due to Creditor as an outstanding debt. Next, Debtors enjoy the protection from creditors seeking to improperly enforce a right to set off.  In the case at bar where Creditor was caught red-handed with funds, he thereafter sought to exercise a questionable right to set off his unsecured claims

after the commencement of the petition.  This resulted in an end run around the factual

matters related to the status of the funds and in fact rewarded the acts of concealment

upon discovery with unjust enrichment of Creditor who, at all times was represented by

Critzer.  Creditor's questionable acts of maintaining possession of the disputed $865.00,

while ignoring mandatory disclosures of the same, should not be rewarded by further

unchecked allowance of an act that is strictly enforced under the Bankruptcy Code.  The

procedures that apply to all parties, whether or not they are proceeding in an adversary in

front of the Court, are the same for all creditors.  Creditor must have a legal right in

contravention of the other parties in interest in funds he seeks to set off during a

bankruptcy case before taking such actions as those delineated in the underlying

Complaint.  Such behavior on the part of Creditor which constitutes active concealment,

and their after setting off any amount owed to him resulted in intentional acts such that

behavior by both Critzer and Creditors observe in their pleadings filed with the Court and

later acts and omission to act should not go unchecked.

In the case at bar, Counsel Critzer argued for legal title to funds held by Creditor

but did not seek a motion for relief to have the court determine these matters nor maintain

lawful possession.  Thereafter, Critzer argued on behalf of Creditor the "unapplied" funds

belonged to Creditor and then later, presumably he applied them upon the advice of

counsel as a right to set off in contradiction of §362(a)(7) and applicable caselaw.  The

most recent case and directly on point in *Wood v. United States Department of Housing

& Urban Development, (In re Wood) (4th Cir. 2021),* the U.S. Court of Appeals for the

Fourth Circuit Court stated, "Under the Code's automatic stay provisions, the bankruptcy

petition itself operates as an automatic stay "applicable to all entities" of a broad range of

actions aimed at the reappropriation of property in the bankruptcy estate…. Specifically

articulated at § 362(a)(7) is an automatic stay on "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." Such a setoff has been formally effected upon completion of the following three steps: "(i) a decision to effectuate a setoff, (ii) some action accomplishing the setoff, and (iii) a recording of the setoff." *Strumpf*, 516 U.S. at 19. Given that the Woods' overpayment is concededly part of their bankruptcy estate, it is evident that by unilaterally remitting the overpayment to HUD, so that HUD could record it against the Woods' debt, the government did exactly what the Code forbids." *Wood*, Page 11.

There is further a myriad of earlier cases denouncing the conduct by Creditors under such circumstances that given the underlying proceedings in this court is arguable should also be applied to their counsel.  In *Impeva Labs, Inc. v. Sys. Planning corp. (N.D. Cal. 2012)*, the Court, quoting *Rissetto v. Plumbers & Steamfitters Local 342, 94 F.3d 597, 600 (9th Cir. 1996)*, stated "Under 11 U.S.C. § 362(a)(1), the commencement of a judicial action against a debtor is automatically stayed unless it falls within one of the enumerated exceptions. Aside from the limited exceptions in 11 U.S.C. § 362(b), the automatic stay provision applies "to almost any type of formal or informal action against the debtor or property of the estate."... Page 18, FN 7.  Given this it is hard to imagine that the acts described in the Complaint therein necessarily concerning the disputed property interest of the estate and the conduct by Creditor and their counsel in contravention of those interests does not implicate the automatic stay.  Further evidence of counsel's culpability exists on the record where Critzer filed her notice of appearance in the case and later a proof of claim for Creditor and thus presumed some level of duties in regards to said acts or omission in regards to the unsecured debt, the disputed funds,

inaction in regards to seeking relief from stay and further acts of concealment and thus

any acts in violation of the stay.

Furthermore, the Court in *In re Lessig Construction, Inc.& Pennsylvania National

Mutual Casualty Insurance Company v. Schnabel Associates, Inc., 67 B.R. 436 (1986)*

stated, "…the automatic stay, in any event, bars the Defendant from setting off any

claims against the Debtor without first obtaining relief from the stay. By its very terms,

11 U.S.C. § 362(a)(7) provides that "a petition . . . operates as a stay, . . . of . . . the setoff

of any debt owing to the debtor that arose before the commencement of the case under

this title against any claim against the debtor; . . ." *Lessig* page 443.  Also, the Court in

*U.S. v. Reynolds, 764 F.2d 1004 (4th Cir. 1985)*.  "Among other things, section 362(a)

stays: (7) the setoff of any debts owing to the debtor that arose before the commencement

of the case under this title against any claim against the debtor." *Reynolds* page 1006.

Further, the Court in *Reynolds*, quoting the Court of Appeals for the Third Circuit in

*United States v. Norton, 717 F.2d 767*, stated, "The scope of the automatic stay is broad.

It prohibits, among other things, any act to obtain possession of property belonging to the

debtor's estate, any act to collect on a claim against the debtor that arose before the filing

in bankruptcy, and any act to set off a debt owing to the debtor that arose before the

filing." *Reynolds* page 1006.

Defendant supports their assertions in predominately the same way that it

supports their FDCPA claims, despite numerous communications with opposing counsel

prior to the filing of the Complaint, which thoroughly clarified the acts and omission that

where and continue to be of grave concern by opposing counsel throughout the

proceedings therein.  As should be obvious at this juncture Debtor is not seeking redress

under the stay regarding merely an erroneous proof of claim as asserted repeatedly by

respondent. The significance of the acts and omission are highlighted very clearly in both

Debtor's Complaint and, to the extend necessary, highlighted throughout herein.  To

gloss over the Debtor's factual contentions and conclude the mere filing of an erroneous

proof of claim resulted in the proceedings herein is to be, at best disingenuous, and at

worst to show contempt for the very process that Debtor seeks to preserve, namely, the

guarantees promised to the honest debtor of a fresh start.

Ample evidence is before the court in regards to concealment of assets of the

estate, which  Debtor further contends may well be in excess of the $865.00, amounts and

in regards to disputed or third-party rights to set off, the conduct of parties and their

counsel and the resulting excessive and compounded stress, fees and costs incurred by

Debtor at this juncture, where the case law is ample and telling in every regard.  Plaintiffs

have alleged sufficient facts supported by an extensive record such that there should be

no confusion at this stage of the proceedings as to what factual matters the Debtor would

have the Court determine.

### III. PLAINTIFF FREDERICK COOPER MOVES TO AMEND HIS COMPLAINT

Plaintiff, had previously informed opposing counsel as early as 24 hours after

filing the initial complaint herein that the complaint was filed erroneously contained two

paragraphs from an irrelevant draft, where the complaint was hurriedly filed upon the

deadline of the statute of limitations on the FDCPA claim.  In doing so Chandler

specifically advised she would thereafter amend the complaint and in doing also provide

a more definitive statement as Counsel for Defendant stated some level of confusion at

the pleadings where Chandler reassured him that she would address the same articulating

that the relief sought might be as in the alternative and thus an alias summons would be

served.  Counsel Biondi despite <u>not</u> being served with the original complaint opted to file his response to the initial pleadings.  Hence, being forewarned of the intent to amend Plaintiff's complaint within the time period allowed by statue where Plaintiff is entitled to amend their compliant without leave of the Court, Plaintiff now request leave to do so. It is further necessary at this juncture given other remedies which exist in relation to the filing of a false proof of claim and other factual matters relevant to the initial complaint with respect to actions under Rule 3001(c)(2)(A) the filing of an erroneous and false proof of claim.

With respect to those matters the Debtor must request an extension of time to file objections to claims, the prior Motion to extend time to Objection to claims by Debtor was ruled as moot by the Court, and as yet appearing relevant to the proceedings herein. Further, it appearing that parties did not reach final resolution of matters where parties other than Howland are now needed for final adjudication.  Thus, Debtor now seeks to preserve his further grounds for relief as to the interests of the Debtor and the Chapter 13 estate.  The Debtor now would ask the Court to allow Debtor to refile his motion to extend time to object to the claims outlined herein with the expectation that Plaintiff shall amend his complaint to add further damages for fees and costs on behalf of the estate for failure by Parties to comply with Rule 3001(c)(2)(A) and amend his complaint to add other necessary parties namely William Howland.

## <u>CONCLUSION</u>

WHEREFORE, the matters herein are correctly in front of the Court and are primarily factual in all regards for determination and the Courts review.  The same has been argued by Critzer where she vigorously argued several contrary positions in prior actions and yet contended each of the matters relied on discrete factual contentions.

Cooper's interest and those of Kane and the argument by Creditor that a self-proclaimed constructive trust resulted as to the $865.00, are a matter for a legal determination of the respective rights of the parties in interest. Thus, said determination and burdens are shared by both Creditor and his Counsel both under the FDCPA and the bankruptcy stay provisions and should rightly fall on the shoulders of Critzer et al and her former client for seeking repayment of amounts not due and owing, Resulting in a failure to seek leave of the Court, provide any proper notice to the Chapter 13 trustee and acting to secure repayment of the $865.00 before initiating a proceeding for relief that resulted in a change to the status quo. The resulting change in position occurred where at all times Critzer was counsel to Creditor and thus acts or omissions under the stay are actionable as towards Critzer. Further evidence of this exists where Critzer filed her notice of appearance in the case and later a proof of claim for Creditor and thus presumed some level of duties in regard to said acts or omission in regard to the unsecured debt, the disputed funds and thus any resulting change in the status quo or acts in violation of the stay occurred during her appearance in the case.

The Plaintiffs seek judgment against the Defendant in the full amount of all actual damages to be proven at trial, including damages for financial harm, pain and suffering, and mental anguish, compensatory damages and punitive damages, plus attorney fees, and all costs of filing this suit, and all other relief as this court deems just, equitable and proper under these circumstances.

Respectfully submitted,

**Frederick Dewon Cooper**
By Counsel

/s/ Kimberly A. Chandler

Kimberly A. Chandler, VSB# 47897
**Chandler Law Firm**
P.O. Box 17586
Richmond, VA 23226
Phone (804) 353-1971

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of April 2021, the following person(s) were served with a copy of the foregoing Plaintiffs' Response to Defendant's Motion to Dismiss, and Memorandum in Opposition and Motion to Amend Pleadings via the CM/ECF system or by first class mail, postage prepaid to the Chapter 13 Trustee, the United States Trustee and all parties in interest as set forth on the attached service list:

Carl M Bates, Esquire
P.O. Box 1819
Richmond, VA 23218

Office of the US Trustee - Region 4 -R
701 E. Broad Street, Ste. 4304
Richmond, VA 23219

Andrew Biondi, VSB No. 48100
Sands Anderson PC
P.O. Box 1998
Richmond, Virginia 23218-1998

Frederick Dewon Cooper
720 Carldan Road
Richmond, VA 23227

/s/ Kimberly A. Chandler
Counsel for Debtor(s)